Ardry ROGERS, an Infant, by His Mother and Next Friend, Mrs. Eunice Rogers, Plaintiff,

v.

The BOARD OF EDUCATION OF the LITTLE ROCK, ARKANSAS, SCHOOL DISTRICT, a Public Body Corporate, Floyd Parsons, Superintendent of the Little Rock, Arkansas, School District, the Arkansas Athletic Association, and J. M. Burnett, Executive Secretary of the Arkansas Athletic Association, Defendants.

No. LR–67–C–147.

United States District Court
E. D. Arkansas, W. D.

Feb. 15, 1968.

---

**6.** 113 Congressional Record No. 1397 (H. DOC. No. 56), 1967 U.S. Code Congressional and Administrative News, pp. 195–205 at p. 202.

John W. Walker, Norman J. Chachkin, Little Rock, Ark., Jack Greenberg, Michael Meltsner, New York City, for plaintiff.

Robert V. Light, G. Ross Smith, Smith, Williams, Friday & Bowen, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

GORDON E. YOUNG, District Judge.

This was brought as a class action under F.R.Civ.P. 23(b) (2) by the mother of Ardry Rogers, who was enrolled as a ninth grade student in the Pulaski Heights Junior High School operated by defendant Board of Education of the Little Rock School District. The action challenged an athletic eligibility rule promulgated by defendant Arkansas Athletic Association and adhered to by defendant School District. Declaratory and injunctive relief was sought prohibiting the enforcement of that rule or any other rule which tended to deny to Negro pupils entering predominantly white schools pursuant to freedom of choice plans any rights or privileges available to other pupils attending the school to which they transfer.

The Arkansas Athletic Association is a voluntary, nonprofit organization which regulates the athletic programs of public and private secondary schools in Arkansas. In pursuance of this function the Association establishes eligibility rules for participation in high school and junior high school athletic activities. The Association has had a long-standing rule of athletic eligibility which is made a part of its bylaws and which reads:

> "[W]here two senior high schools or other schools of secondary grade are located in the same city or district a pupil who attends one may not transfer to the other without a corresponding change of residence, without losing his eligibility for competition in athletics * * * until he has attended the new school for one calendar year." [Article I, Section 11, Arkansas Athletic Association By-Laws.]

Although at the time the rule was originally adopted membership in the Arkansas Athletic Association was limited to white secondary schools, the adoption and enforcement of the rule was not motivated by considerations of race. At the time of the rule's adoption, Negro secondary schools belonged to a separate Association which fulfilled many of the same purposes and functions. That Association had a similar rule. The legitimate objective sought to be established by the rule concerns the avoidance of

athletic recruiting between secondary schools.

About 1965, because of the adoption of freedom of choice desegregation plans by many Arkansas school districts, the Association issued an interpretation of the quoted rule to the effect that a student transferring from a school where his race was in the majority to a school where his race would be in the minority would not be subject to the one-year loss of eligibility if the transfer was made at the student's first opportunity. The "first opportunity" has been consistently held by the Association to mean the first year during which a student could have exercised his choice under a plan to attend a different school.

The Little Rock School District's freedom of choice plan provides:

"A student attending school for the first time on a desegregated basis may not be subject to any disqualification or waiting period for participation in activities and programs, including athletics, which might otherwise apply because he is a transfer student." [Paragraph 15, Little Rock School District's Desegregation Plan.]

The District may have interpreted the words "for the first time" in the same manner as the Arkansas Athletic Association interpreted the words "at the first opportunity." It is more likely, however, that the District simply felt that as a member it was bound by the Association's interpretation of its rule. At any rate, plaintiffs' contentions with regard to the interpretation of both rules were similar.

Ardry Rogers attended the all-Negro Booker Junior High School maintained by defendant Little Rock School District during the school years when he was in the 7th and 8th grades. During the choice period in the spring of 1967 Rogers exercised his choice to attend the predominantly white Pulaski Heights Junior High School during his ninth school year. The Association and the District ruled that he was ineligible to participate in Pulaski Heights athletic programs because his first opportunity to transfer to a predominantly white school would have been the 7th grade year. Plaintiffs' position is that the rule as thus interpreted manifestly tends to inhibit and influence the choices of Negro students, thus denying the Negro students in schools with freedom of choice plans the "free" choice mandated by the Constitution. See Goss v. Board of Education, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632 (1963).

Plaintiffs sought a temporary restraining order against the defendants on the ground that if temporary relief were not granted and the normal processes of decision were permitted to take their course, the football season would terminate and any decision would be valueless to protect the rights of minor plaintiff.

Upon hearing, the Court found that minor plaintiff was:

" * * * 'attending school for the first time on a desegregated basis' as a ninth grade student at Pulaski Heights Junior High School in Little Rock, Arkansas, within the meaning of the desegregation plan of the Little Rock School District, and in view of the provisions of Paragraph 15 of the plan may not be subjected by the district to any waiting period for participation in the athletic program at Pulaski Heights."

A temporary restraining order was therefore issued against the school district and its superintendent enjoining them from applying the Arkansas Athletic Association rule to minor plaintiff.

■ At the hearing on the merits on December 7, 1967, the defendants introduced testimony supporting their contentions that the adoption of the rule was not racially motivated and that the control of athletic recruiting was a legitimate, nonracial goal of the rule. However, the Court believes that the rule and its recent interpretation by the Arkansas Athletic Association has an unavoidable tendency to restrict the rights of Negroes who exercise their choice to attend predominantly white schools. The

operation of the rule can only create or add to the reluctance on the part of Negro students to attend predominantly white schools. The unavoidable inhibiting effect of the rule upon individual students' free choices renders its application unconstitutional as a denial to Negro students of the equal protection of the laws.

The United States Court of Appeals for this Circuit has clearly indicated its position that a freedom of choice plan can be approved only if it contains no program which

> "is designed to, or in fact does, intimidate or influence the students in their choice of schools, so that Negro children are induced to attend Negro schools * * *." [Clark v. Board of Education, 369 F.2d 661, 667 (8th Cir. 1966)]

It is also to be noted, although they are in no sense binding upon this Court, that the H.E.W. Guidelines, 45 C.F.R. § 181.14(b) (1), appear to prohibit an eligibility rule such as the one attacked here.

Defendants point to the decision of the Fifth Circuit in United States v. Jefferson County Board of Education, 372 F.2d 836 (5th Cir. 1966), rehearing en banc 380 F.2d 385 (5th Cir. 1967), cert. den. Caddo Parish School Board v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L. Ed.2d 103 (1967). The decree which the Fifth Circuit Court of Appeals approved for all desegregation cases pending in the Circuit provided:

> "A student attending school for the first time on a desegregated basis may not be subject to any disqualification or waiting period for participation in activities and programs, including athletics, which might otherwise apply because he is a transfer or newly assigned student except that such transferees shall be subject to long-standing, non-racially based rules of city, county, or state athletic associations dealing with the eligibility of transfer students for athletic contests."

The Court is not persuaded that the Fifth Circuit Court intended by its language to approve the operation and effect of a rule like the one involved in this litigation. The Court is not convinced, however, that the entry of a broad injunction as prayed for by plaintiff will contribute to the solution of this difficult problem. Instead, the Court has, with the assistance of counsel for both sides, drafted an alternative rule which the Court will require the Arkansas Athletic Association to adopt and to enforce, at least until the beginning of the 1970–71 school year, that:

> "The first time a student transfers from a school where his race is in a majority to a school where his race is in a minority he will not lose any eligibility due to the rule pertaining to residence and transfer students; provided:
>
> "(a) Both schools are in the same school district;
>
> "(b) Recruitment for athletic purposes played no part in the transfer; and
>
> "(c) The transfer is made at, or prior to, the commencement of the school year.
>
> "This modification shall be in effect from December 7, 1967 to the beginning of the 1970–71 school year."

█ Plaintiffs also sought an award of attorneys' fees against both the school district and the Athletic Association, contending that the school district took no action to protect the rights of Ardry Rogers under its own desegregation plan, and the Association steadfastly refused to consider any change in its rules even though it was aware of the inhibiting effect its eligibility rule had upon the exercise of free choice by Negro students.

As to the Association, the rule is non-discriminatory on its face, and admittedly its origin and motivation had no connection with race. Its purpose was, and is, laudable. It must fall only because, on balance, it offers at least a "quiet and subtle" (Clark v. Board of Education,

supra) inducement for Negro students to remain in Negro schools.

The Little Rock School District as a member of the Association had no practical alternative to obedience to the Association's rules.

The Court has no doubt that the defendants proceeded at all times in good faith, and an award of attorneys' fees is denied.